## LEWIS JOHNSTON v. WILLIAM DARRAH.

1. An execution duly recorded when delivered to the sheriff, is entitled to priority as to real estate, over an execution previously delivered but not recorded until after the delivery of the other.

2. It is competent for the plaintiff, to prove that an execution delivered to, and endorsed by the sheriff, previous to the delivery of the plaintiff's execution, was not recorded until after the delivery of his execution to the Sheriff.

---

This cause came before the court on the following state of the case agreed upon by the parties at the Sussex circuit, when the cause was carried down for trial.

"On the twenty-first of August, one thousand eight hundred and twenty-one, Lewis Johnston the plaintiff, obtained a judgment in the Inferior Court of Common Pleas of the county of Sussex, against James Johnston, for the sum of five hundred and forty-three dollars and seventy-two cents of debt, and thirty dollars and fifty-nine cents of costs of suit."

"On the same day and in the same court, one Peter Weller obtained a judgment against the said James Johnston and one Richard Henry, for the sum of          of debt and          of costs of suit."

"Writs of *fieri facias de bonis et terris* issued on each of said judgments, on the said twenty-first day of August, one thousand eight hundred and twenty-one; and were respectively placed in the hands of Benjamin T. Hunt, Esq., Deputy Sheriff of the county of Sussex, on the same day."

"The execution of Peter Weller was first received by the deputy sheriff, and marked or endorsed according to the statute. At the time when it was thus received and endorsed by the deputy sheriff, the said execution was not recorded."

"The execution, in favor of Lewis Johnston, came into the office to be recorded immediately after the entry of the judgment, in his favor, and whilst there and before it could be recorded, the execution in favor of Weller also came in to be recorded, being endorsed as above mentioned."

"Johnston's execution was first recorded, and was immediately delivered to the same deputy sheriff, who endorsed on it the time of receiving it."

"Weller's execution was then recorded in its turn, and was afterwards, on the same day, delivered a second time to the said deputy—the execution of Johnston being at that time in his hands."

"On the twenty-sixth of November, one thousand eight hundred and twenty-three, the real estate of James Johnston, the sole defendant in the execution of Lewis Johnston, and one of the defendants in the execution of Peter Weller, was sold by William Darrah, Esq., High Sheriff of the county of Sussex, for the sum of eight hundred and three dollars, and the money paid over to the execution of Weller."

"Whereupon this suit is brought against the said William Darrah, to recover the amount due on the execution of the said Lewis Johnston."

"If the court shall be of opinion that it is competent for the plaintiff to give evidence of the facts above stated, and that they are sufficient to entitle him to a recovery, then judgment is to be entered in favor of the plaintiff, for the amount due on his said execution with costs."

"If the court shall be of opinion that the plaintiff is not entitled to recover, then judgment, as in case of a *non-suit*, is to be entered for the defendant. Either party shall be at liberty to turn this case into a special verdict."

This cause was argued last term by *Vroom*, for plaintiff, and *Saxton and Frelinghuysen*, for the defendant.

Ewing, C. J., now delivered the opinion of the court.

The principal question in this cause was decided in the term of February, 1807, in the case of *Elmer* v. *Burgin*, *Penn. Rep.* 186. An execution duly recorded when delivered to the sheriff, was unanimously held by the court to be entitled to priority, as to real estate, over an execution previously delivered, but not recorded until after the delivery of the other. Upon much consideration I am entirely satisfied of the correctness of that determination. The statute pointedly forbids the delivery to the sheriff of an execution until it has been recorded, and surely an execution delivered in express violation of the statute cannot be entitled to its favor and protection. There is in truth no legal delivery of the writ, until after the recording of it. The priority does not depend on the endorsement by the sheriff solely; that, in the language of the statute, is but for the better manifestation of the time. The priority is made to depend on the time of delivery; but it must be the delivery of a lawful writ, a writ conformable to the statute—a writ previously recorded.

It was conceded by the counsel of the defendant, and rightly, that an execution not recorded is not operative on real estate. Now when the statute in the *4th Section* speaks of an execution against real estate, an operative execution, one under which real estate might legally be levied on, advertised and sold, is clearly intended. When therefore the execution of Johnston was delivered to the sheriff, no execution, within the contemplation of that section had been previously delivered to him. It was the first delivered and, according to the statute, should have been first executed and satisfied. The period of delivery of the execution of Weller, according to the just construction of the statute, was when it was a second time handed to the sheriff after it had been recorded.

It was contended by the counsel of the defendant that the rule of priority depends on the period of delivery. It is true, as I have already remarked. But the delivery of

what? An execution duly recorded, or an execution not yet recorded and therefore expressly forbidden by the statute? Surely the former. It was farther contended that the construction given to the 8th section must be extended also to the 7th, and an execution not indorsed with the debt or damages and costs, prior to the sealing, be deemed inoperative. If it be so, it does not follow that the construction of the 8th section is erroneous. An opinion however on this matter need not be given until such question shall actually occur. It was farther insisted that the rule of priority would be vague and uncertain if made, as supposed by the counsel, to depend on the time of recording. Nothing however turns on the mere period of recording, but all on the respective times of delivery to the officer, of executions duly and previously recorded.

The only difference in matter of fact between the present case, and that of *Elmer* v. *Burgin* is, that in the latter the execution first delivered was not recorded until after its return day. But the great governing principle is common to both cases. The execution of Weller, having been recorded before the levy and return, cannot thereby gain a priority by retroactive operation, but is saved from the hazard of an objection which might have been raised, with what success I need not say, against the first delivered execution in the case reported, that from want of record until after the return day it was not entitled to any part of the moneys arising from the sale of the real estate.

Another question is proposed by the state of the case before us. Whether it is competent for the plaintiff to give evidence that the execution of Weller was not recorded when it was delivered to and endorsed by the sheriff, and that it was not recorded until after the delivery of the plaintiff's execution.

The statute does not require the clerk to make a record of the time of recording an execution. And there can be no legal obstacle to the manifestation of the actual time when-

ever that becomes material, especially in an action against the sheriff himself, who, if through waywardness or ignorance he has made a wrong indorsement, cannot prejudice a party by giving undue preference to another, and save himself by any supposed sanctity of his endorsement. Nor can any rule of law be found which will preclude an inquiry into the truth of the case. In *Hynde's case*, 4 *Co*. 70, one of the points was "whether the defendant should be admitted to aver when the deed" [a deed of bargain and sale] "was enrolled"—and it was insisted, "that the deed was enrolled the first day of the said Easter term, for the term, as to divers purposes is but one day in law, and *eo potius*, because it doth not appear by the record what day of the term the deed was enrolled, but generally *Term. Pasch*, and therefore it should be intended to be enrolled the first day of the term." "It was answered and resolved by the court that it is true that it should be intended, by presumption, that the deed was enrolled the first day of the term, but *stabit præsumptio donec probetur in contrarium*. And that it is true that records import in themselves truth and conclude all men from denying anything appearing within the record. But to take averment which stands with the record and which doth not impugn anything apparent within the record, the law doth well admit and allow." "And although enrollment or other matters of record shall not be tried *per pais*, yet the time when the enrollment was made, shall be tried *per pais*, for the enrollment itself shall never be drawn in question, but only the time of it;" "and that if such averment should not be admitted, great injustice would be protected, and great inconvenience ensue on the other side, for suppose, as hath been said, that the beginning of the term is only within the six months, and in truth the enrollment was made towards the end, out of the six months, if such averment shall not be received, the bargainor would be disinherited against truth and justice."

Judgment for plaintiff.